**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

David R. Bruner,                                        )   No. CV 07-257-PHX-MHM
                                                        )
            Plaintiff,                                  )   **ORDER**
                                                        )
vs.                                                     )
                                                        )
                                                        )
Michael J. Astrue, Commissioner of Social )
Security,                                               )
                                                        )
            Defendant.                                  )
                                                        )
_____ )

        David R. Bruner ("Plaintiff") seeks judicial review of the Administrative Law Judge's ("ALJ") decision denying his claim for disability insurance benefits and Supplemental Security Income ("SSI").  42 U.S.C. §§ 405(g), 1383(c).  The parties have filed Cross-Motions for Summary Judgment.  The Court review the parties' Motions and issues the following Order.

**I.      PROCEDURAL HISTORY**

        The Plaintiff, David R. Bruner, filed for disability insurance benefits and supplemental security income on September 19, 2003, alleging an onset date of disability of May 23, 2001. (See Transcript of Administrative Record ("Tr.") 355-357).  Plaintiff's applications were denied both initially and upon reconsideration. (Tr. 17-29).  Plaintiff requested and received a hearing before an administrative law judge ("ALJ"), which was held on September 6, 2005. (Tr. 20.)  The ALJ determined that the Plaintiff was not disabled within the meaning of the

1  Social Security Act, and his November 22, 2005 decision became final when the Appeals

2  Council chose not to disturb it.   (Tr. 20-29, 9-11).

3        Plaintiff brought the current action for judicial review on February 2, 2007 pursuant

4  to 42 U.S.C. § 405(g), 1383(c)(3). (Dkt. #1).  The Plaintiff and the Commissioner of Social

5  Security have brought motions for summary judgment. (Dkt. #23, 30).  After consideration

6  of the arguments set forth in the parties' briefs , the record in the case, and the applicable law,

7  the Court issues the following order.

8  **II.**    **FACTUAL BACKGROUND**

9      **A.**    **MEDICAL HISTORY**

10        Plaintiff suffered a work related back injury on May 23, 2001. (Tr. 327).  He reported

11  hearing "something snap" and experiencing sever pain.  (Tr. 41).  Plaintiff immediately

12  reported his  injury to his employer who in turn told Plaintiff to "just tough it out." (Tr. 44,

13  327).  Plaintiff worked out the remainder of his shift.  (Tr. 44).  Plaintiff's initial doctor visit

14  was on May 25, 2001, at Urgent Care Center (Tr. 343, 327), where  Plaintiff was prescribed

15  several medications including Vioxx and epidural injections (Tr. 342).  On July 20, 2001,

16  Plaintiff returned to Urgent Care Center for continued lower back pain and was sent for an

17  MRI.  (Tr. 314).  The MRI revealed that Plaintiff was suffering from central canal spinal

18  stenosis with paracentral disk protrusion. (Tr. 270).  On July 20, 2001, Plaintiff was referred

19  to and seen by Byran A. Gunnoe, M.D., an orthopedic surgeon, at Urgent Care Center.  (Tr.

20  327-328).

21        During the initial visit, Dr. Gunnoe prescribed Plaintiff a series of epidural steroid

22  injections and suggested Plaintiff continue home exercise but terminate physical therapy.

23  (Tr. 327-328).  Plaintiff received steroid injections on July 27, 2001 (Tr. 339) and August 7,

24  2001 (Tr. 338).  After the injections, on August 20, 2001, Plaintiff reported to Dr. Gunnoe

25  that he felt some relief in his back and that the pain radiating down his leg had disappeared.

26  (Tr. 324).  Dr. Gunnoe released Plaintiff to light duty work restricting Plaintiff from lifting

27  or carrying more than thirty pounds of weight, changing positions every two hours, and

28  driving no more than 48 hours a week.  (Tr. 324).  One month later, on September 20, 2001,

1   Plaintiff again visited Dr. Gunnoe and reported persistent low back pain. (Tr. 323). Plaintiff

2   reported that he did not return to work due to the restrictions given. (Tr. 323). Dr. Gunnoe

3   amended Plaintiff's restrictions, limiting Plaintiff to occasionally lifting up to seventy-five

4   pounds, frequently lifting up to fifty pounds, constantly lifting up to thirty pounds, without

5   specific limitations on bending or stooping. (Tr. 323). Dr. Gunnoe recommended sending

6   Plaintiff to Richard Maxwell, M.D., for an independent medical evaluation. (Tr. 323).

7   　　　　On April 3, 2002, Dr. Maxwell diagnosed Plaintiff with Lumbar Stenosis, spoke with

8   Plaintiff about various surgical options and their complications, and ordered a CT

9   myelogram. (Tr. 260). Plaintiff underwent a CT myelogram on April 22, 2002 with Warren

10  G. Goodman, M.D., which found a moderate-sized broad-based disk herniation at the L4-L5

11  level. (Tr. 277). On May 15, 2002, Dr. Maxwell saw Plaintiff and Plaintiff continued to

12  complain about his back, legs, and left foot tingling. (Tr. 257-259). Dr. Maxwell noted that

13  Plaintiff is suffering from lumbar stenosis, lumbar spondylosis, a herniated disk, and Sciatica.

14  (Tr. 257-259). Plaintiff was seen by Charles Gauntt, M.D., on May 31, 2002 (Tr. 316),

15  where Plaintiff reported he continued to have pain in his back with radiation down his lower

16  extremity and none of the treatment has given Plaintiff long term relief. (Tr. 320). Dr.

17  Gauntt reported that Plaintiff's physical examination and MRI findings are consistent with

18  a herniated nucleus pulpsus at L4-5 and Plaintiff has failed conservative treatment, leaving

19  surgery as the only remaining treatment available. (Tr. 321-322).

20  　　　　On August 15, 2002, under the treatment of Dr. Maxwell, Plaintiff underwent lower

21  back surgery. (Tr. 282). Dr. Maxwell referred Plaintiff to physical therapy on October 16,

22  2002. (Tr. 252).

23  　　　　Sometime between April and May 2002, Plaintiff suffered a subsequent injury to his

24  shoulder. (Tr. 45-46, 251). On October 11, 2002, Plaintiff had an MRI of his shoulder (Tr.

25  269) which revealed a rotor cuff tear (Tr. 251). On January 17, 2003, Plaintiff underwent

26  shoulder surgery at Dr. Maxwell's direction. (Tr. 120-121).

27  　　　　On June 12, 2003, Jon Zoltan, M.D., completed an independent medical evaluation

28  of Plaintiff's shoulder and opined that Plaintiff did not require further medical care only

1  supportive care. (Tr. 151). On June 26, 2003, Zoran Maric, M.D., completed an independent

2  medical evaluation of Plaintiff's back and opined that Plaintiff's subjective pain complaints

3  were not substantiated by objective findings and Plaintiff underwent surgery that was much

4  more extensive than necessary. (Tr. 149-150).  Dr. Zoran considered Plaintiff's condition

5  medically stationary with a ten percent impairment rating of the whole person.  (Tr. 149-

6  150). Dr. Maric recommended Plaintiff to be placed on permanent work restrictions where

7  Plaintiff is to avoid lifting more than twenty-five pounds, repetitive bending, and scooping

8  activities. (Tr. 149-150).  Dr. Maric also confirmed that the hardware placed in Plaintiff's

9  back during surgery in not positioned correctly. (Tr. 150, 263, 274). This included that the

10  pedicle screws are too short, the rods are too long, and there is only one Brantigan cage in

11  place. (Tr. 150).  Dr.Maric reported that he had never seen only one Brantigan cage placed

12  in this manner because the cage is only designed to be placed in twos. (Tr. 150).

13  On July 26, 2003, in a Physical Capacities Evaluation, Dr. Maxwell opined that

14  Plaintiff cannot work an eight hour day and needs to change position frequently and

15  continuously. (Tr. 213, 272).  Dr. Maxwell reported that Plaintiff can lift up to twenty

16  pounds occasionally and can carry up to five pounds occasionally. (Tr. 213, 272).  On

17  October 24, 2003, Dr. Maxwell reiterated that Plaintiff is unable to work and suggested

18  Plaintiff may have pseudo arthrosis. (Tr. 203).

19  On October 28, 2003, in a Medical Source Statement of Ability to do Work-Related

20  (Physical) Activities, James Missey, M.D., Plaintiff's physical therapist from February 25,

21  2003 through June 2, 2003, reported that in his opinion, Plaintiff has lifting or carrying

22  restrictions. (Tr. 186).  Dr. Missey reported Plaintiff may occasionally and frequently lift

23  less than ten pounds, can stand or walk less than two hours in an eight hour work day, must

24  use a cane to walk or stand, may sit six hours in an eight hour work day if alternating sitting

25  and standing, and concluded that Plaintiff has limited lower and upper body coordination.

26  (Tr. 186-187).

27

28

1    On June 29, 2005, Dr. Maxwell reported that Plaintiff continued to experience pain

2  and considers acupuncture, acupressure, and chiropractic as alternative pain treatments. (Tr.

3  345).

4    **B.    WORK HISTORY**

5    Plaintiff has a limited tenth grade education. (Tr. 38, 57). He worked in various labor

6  jobs prior to his accident. (Tr. 41-43, 90). He was working through a temporary agency

7  building trusses at the time of his accident. (Tr. 42).

8    The ALJ listed hypothetical criteria for the vocational expert to consider and asked

9  if there were jobs available in the national and local economy that would fit that hypothetical

10 criteria. (Tr. 57-58). The vocational expert testified in front of the ALJ regarding jobs in the

11 national and local economy that an individual could perform according to the ALJ's

12 hypothetical. (Tr. 58). The vocational expert opined that an individual meeting the listed

13 criteria could perform three jobs: assembler of small products, DOT (a separate job title of

14 assembler/production), and select cashier positions. (Tr. 58). The expert further testified that

15 these jobs were considered unskilled there is "very little tolerance" for absences. (Tr. 59).

16 A person missing a day a month or taking excessive breaks would likely result in

17 termination. (Tr. 59).

18    The ALJ determined that Plaintiff was not able to perform his past relevant work (as

19 a laborer or cook) but could perform one of these other light duty, unskilled jobs with a

20 sit/stand option that existed in the economy. (Tr. 26). The AJL found, therefore, that

21 Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 27).

22 **III.   STANDARD OF REVIEW**

23    In order to qualify for disability insurance benefits, an applicant must establish that

24 she is unable to engage in substantial gainful activity due to a medically determinable

25 physical or mental impairment that has lasted or can be expected to last for a continuous

26 period of not less than 12 months. See 42 U.S.C. § 1382c (a)(3)(A). In addition, an

27 applicant must show that her physical or mental impairment is of such severity that she is not

28 only unable to do her previous work, but cannot, considering her age, education, and work

1 experience, engage in any other kind of substantial gainful work which exists in the national

2 economy.  Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989).

3 　　　To determine whether an applicant is eligible for disability benefits, the ALJ conducts

4 the following five-step sequential analysis:

5 　　　(1)　　determine whether the applicant is currently employed in substantial gainful activity;

6 　　　(2)　　determine whether the applicant has a medically severe impairment or combination of impairments;

7 　　　(3)　　determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe

8 　　　　　　as to preclude the applicant from engaging in substantial gainful activity;

9 　　　(4)　　if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing

10 　　　　　　his or her past relevant work;

　　　(5)　　if not, determine whether the applicant is able to perform other work

11 　　　　　　that exists in substantial numbers in the national economy.

12 20 CFR §§ 404.1520, 416.920; see also Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987).

13 　　　The Court must affirm an ALJ's findings of fact if they are supported by substantial

14 evidence and free from reversible legal error.  See 42 U.S.C. 405(g); see also Marcia v.

15 Sullivan, 900 F.2d 172, 174 (9th Cir. 1990).  Substantial evidence means "more than a mere

16 scintilla," but less than a preponderance, i.e., "such relevant evidence as a reasonable mind

17 might accept as adequate to support a conclusion." See, e.g., Richardson v. Perales, 402 U.S.

18 389, 401 (1971); Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975); Clem

19 v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990).

20 　　　To determine whether substantial evidence supports a decision, the Court must

21 consider the record as a whole and weight both the evidence that supports and detracts from

22 the ALJ's conclusion.  See Richardson, 402 U.S. at 401; see also Tylitzki v. Shalala, 999

23 F.2d 1411, 1413 (9th Cir. 1993).  However, "[i]t is for the ALJ, not the courts, to resolve

24 ambiguities and conflicts in the medical testimony and evidence." Andrews v. Shalala, 53

25 F.3d 1035, 1039 (9th Cir. 1995) (citations and quotations omitted).  The ALJ may draw

26 inferences logically flowing from the evidence, and "[w]here evidence is susceptible to more

27 than one rational interpretation, it is the ALJ's conclusion which must be upheld." Id.

28 (citation omitted).  Nevertheless, "[i]f there is medical evidence establishing an objective

1
2
3
4
5
6
7
8
9
10
11

basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting that the claimant was malingering, the [ALJ's] reason for rejecting the claimant's testimony must be "clear and convincing" and supported by specific findings." Dodrill v. Shalala, 12 F.3d 915, 917 (9th Cir. 1993) (quotations omitted). And "[w]hen an ALJ's reasons for rejecting the claimant's testimony are legally insufficient and it is clear from the record that the ALJ would be required to determine the claimant is disabled if he had credited the claimant's testimony, [the court must] remand for a calculation of benefits." Orn v. Astrue, 495 F.3d 625, 640 (9th Cir. 2007) (quotation omitted). Regardless, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [then the Court] may not substitute [its] judgment for that of the ALJ." Robbins v. Social Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

12

IV.     DISCUSSION

13
14
15
16
17
18

Plaintiff asserts three basis in support for Summary Judgment including the following: (1) the ALJ improperly rejected the opinion of Plaintiff's treating physician, Dr. Maxwell, regarding the impact of Plaintiff's reaching, hand manipulation, pain, and fatigue; (2) the ALJ erred in rejecting Plaintiff's credibility as to the severity of his symptoms; and (3) the ALJ failed to properly address all vocational factors. The Court will address these issues below.

19
20

A.     ALJ'S INTERPRETATION AND REJECTION OF DR. MAXWELL'S OPINION

21
22
23
24
25

Plaintiff asserts that the ALJ's rejection of Dr. Maxwell's opinion regarding Plaintiff's ability to reach and perform tasks requiring hand manipulation is improper. (Plaintiff's Memorandum in Support of Summary Judgment ("Pl. Memo" p. 8)). Plaintiff further asserts that the ALJ's decision does not reference Plaintiff's failed back surgery, ineffectiveness of physical therapy, nerve root impingement, and incomplete fusion at L4-5. (Pl. Memo p. 9).

26
27
28

Defendant argues that the ALJ rejected Dr. Maxwell's opinion regarding Plaintiff's "limitations on carrying, fine manipulations, and environment" because those findings were not supported by medical evidence and the ALJ provided "numerous reasons" for rejecting

1
2
3
4

Dr. Maxwell's opinion.   (Defendant's Memorandum in Support of Cross-Motion for Summary Judgment (Def. Memo p. 2)).   Defendant's argument rests largely on the support of Dr. Gunnoe's medical opinion as to Plaintiff's condition and the fact that Plaintiff did not undergo further surgery despite Dr. Maxwell's suggestion for such.   (Def. Memo p. 2-3).

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

It is well settled that the ALJ must give sufficient weight to the subjective aspects of a physician's opinion. Rodriguez, 876 F.2d at 762.  Deference is even more appropriate when  the opinion is that of the treating physician. Id. (citing Young v. Heckler, 803 F.2d 963 (9th Cir. 1986) (where court upheld the ALJ's discounting of the treating physician because the treating physician's opinion was unsupported by clinical findings and contradicted by the opinions of all examining physicians).  The opinion of a treating doctor may only be rejected for "clear and convincing" reasons, even if rejected by another doctor the ALJ must provide "specific and legitimate" reasons for rejecting the treating doctor's opinion. Lester v. Charter, 81 F.3d 821, 830 (9th Cir. 1995).  In order to meet this burden the ALJ should provide "a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof." Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) (holding that the ALJ erred by not describing in detail the reasoning for rejecting a treating physician's opinion).  "Merely to state that a medical opinion is not supported by sufficient objective findings "does not achieve the level of specificity our prior cases have required, even when objective factors are listed seriatim." Rodriguez, 876 F.2d at 762. (internal quotation omitted).

21
22
23
24
25

The administrative record should be considered as a whole, "weighing both evidence that supports and the evidence that detracts from the [ALJ's] conclusion." Reddick, 157 F.3d at 720 (holding that the opinions of one-time examining physicians is not enough for an ALJ to reject claimant's treating physician's opinion when there was nothing in the record that proves the treating physician to lack subjectivity).

26
27
28

Here, the ALJ finds that Dr. Maxwell's medical opinion regarding Plaintiff's ability to sit, stand, and walk is reliable.  The ALJ asserted that he was disregarding Dr. Maxwell's

opinion as to the limitations on carrying and fine hand manipulation and moderately severe pain limitations because the extreme limitations are not supported by the medical examination findings. (Tr. 24). The ALJ further discredits Dr. Maxwell's opinion because, although Dr. Maxwell recommended further surgery, Plaintiff did not undergo such surgery. (Tr. 24). However, the ALJ does not provide the requisite detailed summary or reasoned interpretation of the facts and conflicting clinical evidence for disregarding Dr. Maxwell's opinion.

On a thorough and complete review of the record, the Court finds that the ALJ did not provide clear and convincing reasons for rejecting Dr. Maxwell's opinion regarding Plaintiff's disability. The ALJ's conclusion that the Plaintiff did not undergo further surgery despite Dr. Maxwell's suggestion does not provide a clear and convincing reason for disregarding Dr. Maxwell's opinion because Plaintiff adequately addressed his fear of surgery and the loss of the use of his lower extremities. (Tr. 50-51). Thus, the ALJ erred when he failed to provide clear and convincing reasons for disregarding the treating physicians opinion.

## B.    THE ALJ'S REJECTION OF PLAINTIFF'S CREDIBILITY

Plaintiff contends that the ALJ did not sufficiently justify his rejection of Plaintiff's credibility pertaining to his symptoms of pain and fatigue. (Pl. Memo p 9). In order to reject allegations of subjective symptoms, an ALJ must give specific and convincing reasons for the rejection. See Thomas v. Barnhart, 278 F.3d 947, 959-60 (9th Cir. 2002). In his reasoning, an ALJ may evaluate Plaintiff's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ may further consider the "precipitating and aggravating factors" of the pain; the "type, dosage, effectiveness, and adverse side-effects" of

1
2
any prescribed medication for the pain; and "treatment, other than medication." Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991).

3
4
5
6
7
8
9
10
11
12
13
Here, the ALJ did not give substantial reasoning for his rejection of Plaintiff's credibility concerning his disabling pain and fatigue. First, the ALJ considered the medical evidence of record where Dr. Gunnoe released Plaintiff to full-time work. (Tr. 25). The ALJ also considered reports to Dr. Maxwell that Plaintiff was doing reasonably well unless he sat too long. (Tr. 25). Dr. Maxwell noted that Plaintiff was taking a narcotic medication that kept Plaintiff on top of his situation and allowed him to do things. (Tr. 25). Next, the ALJ took into account Plaintiff's daily activities. (Tr. 25). Dr. Gunnoe noted that Plaintiff had been able to do light work around the house, watch television, use his computer, cook for himself, drive a car, and run errands. (Tr. 25). The ALJ points out that Plaintiff mentions he is more limited now than he was in the past, however, concludes that Plaintiff's activities are not those of a person who is too disabled to perform substantial gainful activity. (Tr. 25).

14
15
16
17
18
19
Plaintiff asserts that although there was some fluctuation in his reporting of pain and activity level, Plaintiff remains credible. (Pl. Memo p. 10). Plaintiff claims that the fluctuation should be credited to the effectiveness/ineffectiveness of treatment. (Pl. Memo p. 10). Further, Plaintiff points out that the ALJ references time frames that supercede intense physical therapy, prescription of long acting narcotic medications, and surgery. (Pl. Memo p. 10).

20
21
22
23
24
25
26
27
28
Defendant argues that the ALJ provided clear and convincing reasons for rejecting Plaintiff's pain and fatigue limitations. (Def. Memo p. 3). Defendant asserts that the ALJ's findings are entitled to deference while citing Bunnell, 947 F.2d at 345-46 (holding that the ALJ's ruling is given deference when the ALJ meets appropriate standard for evaluating pain in social security disability cases which requires claimant to produce medical evidence of an underlying impairment that is reasonably likely to be the cause of the alleged pain and when such evidence is produced, the standard does not require medical findings to support the severity of the pain and the adjudicator may not discredit the claimant's allegations of

1
2
3
4
5
6
7
8
9
10
11
12
13

severity of pain solely because allegations are unsupported by objective medical evidence). (Def. Memo p. 3-4). However, Defendant improperly relies on the Bennell case because the Ninth Circuit explains that findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony." Id. (internal quotation omitted). The Bunnell case goes on to suggest factors to consider when addressing Plaintiff's pain allegations. Id. at 346. Here, the ALJ mentioned some of these factors and omitted others. For example, the ALJ mentioned treatment for relief of pain, however, failed to mention functional restrictions associated with that treatment. (Tr. 25). Further, the ALJ completely dismissed Plaintiff's intensive physical therapy, effects caused by prescription medications, and other aggravating factors (*i.e.*, failed surgeries, placement of rods, screws, and cage). (Tr. 321-322). Thus, the Court finds that the ALJ erred when he failed to provide specific and convincing reasons for disregarding the treating physicians opinion.

14

## C.    THE ALJ'S VOCATIONAL CONCLUSIONS

15
16
17
18
19
20
21

The ALJ found Plaintiff retained the residual functional capacity to perform light unskilled work with a sit/stand option. (Tr. 25). The ALJ further notes that Plaintiff is able to carry or lift ten pounds frequently and twenty pounds occasionally, unable to crawl, crouch, climb, squat, or kneel, and has limited use of his lower extremities for pushing and pulling. (Tr. 25). Based on these facts, the ALJ determined that the Plaintiff could not perform his past relevant work, but that his Residual Functional Capacity ("RFC") enabled him to perform "light unskilled work with a sit/stand option." (Tr. 25).

22
23
24
25
26
27
28

At the hearing the ALJ asked the vocational expert whether jobs exist in the national economy for a hypothetical individual of Plaintiff's age, education, past relevant work experience, and RFC. (Tr. 27, 57-58). Assuming the hypothetical, the vocational expert testified that it is possible for Plaintiff to make a vocational adjustment to work in jobs that exist in significant numbers in the national economy. (Tr. 27, 58). The ALJ determined that an individual with Plaintiff's vocational characteristics and limitations could perform this

1
2
3

light unskilled work. (Tr. 27). Because those jobs existed in significant numbers in the economy, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 27).

4
5
6
7
8
9
10
11

Plaintiff argues that the ALJ did not pose a complete hypothetical to the vocational expert and therefore the vocational expert's testimony is meaningless. (Pl. Memo p. 11). Plaintiff points out that although the vocational expert was asked to consider a sit/stand option, the ALJ failed to give a description that referenced the number and length of position changes and whether Plaintiff would require periodic rest throughout the workday. (Tr. 57). Defendant argues that the ALJ was not required to pose more restrictive hypothetical questions because the ALJ had properly discounted Plaintiff's testimony regarding pain and fatigue limitations. (Def. Memo p. 6).

12
13
14
15
16
17

As noted above, the Court found that the ALJ erred when disregarding Dr. Maxwell's medical opinion and  Plaintiff's pain and fatigue allegations. Thus, Plaintiff's argument is valid regarding the ALJ's hypothetical because the vocational expert testified that jobs classified as "unskilled" have little tolerance for absence and excessive breaks. (Tr. 59). Thus, the ALJ erred when he failed to pose a hypothetical that included a reference to the number and length of position changes Plaintiff would require in a workday.

18
19

### D.     REMAND FOR AN AWARD OF BENEFITS

20
21
22
23
24
25
26
27
28

The Court must decide whether remand is appropriate. In <u>Benecke v. Barnhart</u>, the Ninth Circuit applied the "<u>Harman</u> test" to determine whether it was appropriate to remand for an award of benefits or further proceedings. 379 F.3d 587, 593 (9th Cir. 2004) (citing <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir. 2000)). The <u>Harman</u> test directs the district court to "credit evidence that was rejected during the administrative process and remand for an immediate award for benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." <u>Id.</u>

1       The <u>Harman</u> test is satisfied here.  This Court has found that the ALJ failed to provide

2  legally sufficient reasons for rejecting Dr. Maxwell's medical opinion and Plaintiff's pain

3  and fatigue testimony.  Further development of the record is not required, because the

4  vocational expert has already testified that there is little tolerance for a person of Plaintiff's

5  limitations which would understandably require excessive breaks and absences.  (Tr. 59).

6  Based on the vocational expert's finding that the only jobs available to Plaintiff would be

7  unskilled jobs that would not tolerate Plaintiff's absence and excessive breaks if his pain

8  testimony were credited.  Thus, the ALJ would be required to find Plaintiff disabled.[1]

9  **V.     CONCLUSION**

10       For the foregoing reasons,

11
12       **IT IS ORDERED** granting Plaintiff's Motion for Summary Judgment (Dkt. #23).

13       **IT IS FURTHER ORDERED** denying Defendant's Cross-Motion for Summary

14  Judgement (Dkt. #30).

15       **IT IS FURTHER ORDERED** reversing the Commissioner's decision to deny

16  benefits and remanding the case to the Commissioner for a calculation of benefits.

17       **IT IS FURTHER ORDERED** directing the Clerk's Office to enter Judgment in

18  accordance with this Order.

19       DATED this 15th day of September, 2008.

20
21  _____
22  Mary H. Murguia
    United States District Judge
23
24

25       [1]A claimant who is unable to perform his past work will be found disabled if he cannot

26  perform other work in view of his age, education, and past work experience.  20 C.F.R. §
    404.1520(f).  The Commissioner of Social Security has the burden to show that a claimant

27  is able to perform other work available in the national economy.  <u>Tackett v. Apfel</u>, 180 F.3d
    1094, 1098 (9th Cir. 1999).  In light if the vocational expert's finding, the Defendant cannot

28  meet this burden.

- 13 -